

FILED
2021 Jun-04  PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **MIRANDA BEHEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. No.:** |
| | ) | |
| **NORTH ALABAMA MEDICAL** | ) | |
| **CENTER,** | ) | |
| | ) | **PLAINTIFF DEMANDS** |
| **RCCH HEALTHCARE PARTNERS** | ) | **A TRIAL BY JURY** |
| **d/b/a LIFEPOINT HEALTH,** | ) | |
| | ) | |
| **LIFEPOINT HEALTH, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT</u>

## I.    NATURE OF ACTION

1.    Plaintiff Miranda Behel files this action seeking to redress the following unlawful employment actions: pregnancy discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 ("PDA"); interference and retaliation under the Family Medical Leave Act ("FMLA"); violations of the Fair Labor Standards Act ("FLSA"); violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); and violations of Alabama state law.

## II.    JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 (federal question), 1343 (civil rights), and 1367 (supplemental jurisdiction).

3.    Venue is proper in that Defendants employed Plaintiff in Lauderdale County, Alabama.  28 U.S.C. § 1391.

## III.   PARTIES

4.    Plaintiff Miranda Behel (hereinafter "Plaintiff" or "Ms. Behel") is a female resident of Lauderdale County, Alabama.

5.    Defendant North Alabama Medical Center (hereinafter "NAMC") was Ms. Behel's employer at all times relevant to this Complaint.

6.    NAMC is located in Lauderdale County, Alabama.

7.    NAMC had fifteen (15) or more employees in 2018 or 2019.

8.    NAMC had fifty (50) or more employees within a seventy-five (75)-mile radius in 2018 or 2019.

9.    NAMC had more than five hundred (500) employees in 2018 or 2019.

10.    NAMC was an enterprise covered under the FLSA in 2018 or 2019.

11.    Defendant RCCH Healthcare Partners was Ms. Behel's employer at times relevant to this Complaint.

12.   RCCH Healthcare Partners owned and operated NAMC, a $ 250M hospital campus that replaced Eliza Coffee Memorial Hospital, which RCCH had also owned and operated.

13.   RCCH Healthcare Partners administered labor relations at NAMC, including human resources, payroll and benefits, employee orientation, the code of conduct, training, compliance, and policies and practices relevant to the employment claims in this lawsuit.

14.   In 2018, RCCH Healthcare Partners employed over 14,000 employees and had over $ 1.7B in revenues.

15.   On July 23, 2018, LifePoint Health, Inc. announced that it was merging with RCCH Healthcare Partners and would begin operating under the trade name LifePoint Health.

16.   LifePoint Health reported combined pro forma 2017 revenues of over $ 8B with approximately 60,000 employees following the merger with RCCH Healthcare Partners.

17.   The merger was complete on November 16, 2018, two (2) months after Ms. Behel began employment.

18.   The merger resulted in LifePoint Health owning and operating eighty-four (84) non-urban hospitals in thirty (30) states, which included NAMC in Lauderdale County, Alabama.

19.     RCCH Healthcare Partners d/b/a LifePoint Health had fifteen (15) or more employees in 2018 or 2019.

20.     RCCH Healthcare Partners d/b/a LifePoint Health had fifty (50) or more employees within a seventy-five (75)-mile radius in 2018 or 2019.

21.     RCCH Healthcare Partners d/b/a LifePoint Health had more than five hundred (500) employees in 2018 or 2019.

22.     RCCH Healthcare Partners d/b/a LifePoint Health was an enterprise covered under the FLSA in 2018 or 2019.

23.     LifePoint Health, Inc. is a foreign corporation that owns and operates NAMC in Lauderdale County, Alabama.

24.     LifePoint Health, Inc. had fifteen (15) or more employees in 2018 or 2019.

25.     LifePoint Health, Inc. had fifty (50) or more employees within a seventy-five (75)-mile radius in 2018 or 2019.

26.     LifePoint Health, Inc. had more than five hundred (500) employees in 2018 or 2019.

27.     LifePoint Health, Inc. was an enterprise covered under the FLSA in 2018 or 2019.

28.     NAMC, RCCH d/b/a LifePoint Health, and LifePoint Health, Inc. (hereinafter "Defendants") collectively had fifteen (15) or more employees in 2018

or 2019.

29.     Defendants collectively had fifty (50) or more employees within a seventy-five (75)-mile radius in 2018 or 2019.

30.     Defendants collectively had more than five hundred (500) employees in 2018 or 2019.

31.     Defendants were employers covered by the FLSA in 2018 or 2019.

32.     Defendants operated as an integrated enterprise or joint employer of Ms. Behel.

33.     Defendants are subject to joint and several liability for each claim.

## IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

34.     On January 17, 2020, Ms. Behel timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendants.  (Attached herein as Exhibit A.)

35.     The EEOC issued Letters of Determination finding that Defendants discriminated against Ms. Behel on the basis of her pregnancy.  (Attached herein as Exhibit B.)

36.     The EEOC found that Defendants unlawfully failed to provide Ms. Behel with a reasonable accommodation and failed to show any undue hardship in providing an accommodation.  (Ex. B.)

37.     The EEOC also found that Defendants unlawfully terminated Ms. Behel's employment.  (*Id*.)

38.     Defendants did not accept the EEOC's invitation to conciliate with Ms. Behel after the finding of discrimination.  (*Id.*; Exhibit C – Notices of Right to Sue.)

39.     On March 18, 2021, the EEOC issued Notices of Right to Sue. (Attached herein as Exhibit C.)

40.     Ms. Behel's Complaint is timely filed within ninety (90) days of her receipt of the Notices of Right to Sue.  (Ex. C.)

41.     Ms. Behel exhausted all conditions precedent necessary to filing this lawsuit.

## V.    STATEMENT OF FACTS

42.     On or about September 9, 2018, Ms. Behel began employment with Defendants as a line cook in the cafeteria.

43.     Ms. Behel was qualified for her position.

44.     Ms. Behel became pregnant while employed with Defendants.

45.     On or about July 17, 2019, Ms. Behel had a routine prenatal checkup with her obstetrician-gynecologist at North Alabama OB/GYN.

46.     North Alabama OB/GYN is part of Defendant North Alabama Medical Center and located on the same hospital campus.

47.    The OB/GYN's office gave Ms. Behel a letter outlining general work restrictions for pregnant workers that Ms. Behel gave to her supervisor, Monica Coke.

48.    The letter stated that Ms. Behel should not lift items over thirty (30) pounds.

49.    Ms. Coke told Ms. Behel that she needed a letter stating that Ms. Behel could either work or not work.

50.    Ms. Behel went back to her OB/GYN's office to request another letter.

51.    Unbeknownst to Ms. Behel, Defendants also contacted Ms. Behel's OB/GYN without her knowledge or consent.

52.    Defendants shared with Ms. Behel's OB/GYN a purported job description that did not accurately represent Ms. Behel's day-to-day duties.

53.    The OB/GYN issued a second letter dated July 22, 2019, with increased restrictions, stating that Ms. Behel should not lift, push, or pull anything over 20 lbs. for the remainder of her pregnancy.

54.    Ms. Coke told Ms. Behel that she needed a letter stating that Ms. Behel could work with no restrictions.

55.    Ms. Behel told Ms. Coke she needed to work and needed her income and health insurance.

56.     Ms. Coke told Ms. Behel she would have to take it up with Human Resources (hereinafter "HR").

57.     Ms. Behel called HR and informed them of Ms. Coke's requirement that she have no work restrictions.

58.     HR did not dispute Ms. Coke's requirement of no work restrictions or intervene to determine whether an accommodation could be made.

59.     Ms. Behel told both HR and Ms. Coke that she only needed to lift, push, or pull something over 20 lbs. very occasionally.

60.     Up to that point, Ms. Behel's coworkers provided occasional assistance that did not interfere with their jobs because it happened so infrequently.

61.     Lifting, pushing, and pulling items over 20 pounds was not an essential function of Ms. Behel's day-to-day job duties as a line cook.

62.     Ms. Coke and HR refused to consider or continue that accommodation.

63.     Ms. Coke and HR never discussed any accommodation with Ms. Behel that would have allowed her to remain in her position of line cook.

64.     HR required Ms. Behel to interview for other positions within the hospital like an outside job applicant.

65.     On or about July 23, 2019, Kathy Martin in HR scheduled an interview for Ms. Behel with the Medical Records department.

66.     The job in Medical Records paid approximately $ 9.21 per hour, whereas Ms. Behel had been earning $ 12.04 per hour.

67.     Ms. Behel nonetheless went for the interview because she needed to keep her job and health insurance.

68.     On July 26, 2019, Ms. Behel called Steven Hobbs, the Chief Financial Officer, and explained her situation.

69.     Mr. Hobbs told Ms. Behel he would look into it and call her back.

70.     Mr. Hobbs never called Ms. Behel back.

71.     On or about August 1, 2019, Cheryl Lee, Director of Human Resources, left Ms. Behel a voice mail.

72.     Ms. Behel called Ms. Lee back that afternoon and the next day and left messages.

73.     Ms. Lee never returned Ms. Behel's calls.

74.     On August 5, 2019, Ms. Behel went to the hospital and requested to meet with Ms. Lee in person.

75.     Ms. Lee required Ms. Behel to wait in the lobby for over an hour before calling her back to her office after 3:00 p.m.

76.     Ms. Behel explained her situation to Ms. Lee, including Ms. Coke's and HR's response to her doctor's letter and their failures to accommodate her restrictions.

77.     Ms. Lee offered no assistance in helping identify an accommodation.

78.     Ms. Lee acted extremely irritated and abrupt and told Ms. Behel twice that she needed to leave for a meeting at 3:30 p.m.

79.     Ms. Behel told Ms. Lee she had spoken to an attorney.

80.     Ms. Lee told Ms. Behel that did not matter, and that it was too much of a "hassle" to ask people in the kitchen to help her.

81.     Ms. Lee told Ms. Behel there was nothing she could do and concluded their meeting.

82.     After Ms. Behel left Ms. Lee's office, Ms. Behel called Medical Records and told them she was still interested in the position she interviewed for on July 23, 2019, that paid approximately $ 9.21 per hour.

83.     The individual in Medical Records told Ms. Behel they would be in touch.

84.     On August 6, 2019, Kathy Martin in HR called Ms. Behel and left a voice mail.

85.     Ms. Behel called Ms. Martin back, but Ms. Martin did not answer.

86.     On August 7, 2019, Medical Records called Ms. Behel and told her they had an open position that they would discuss with HR.

87.     On August 8, 2019, Ms. Behel called Ms. Martin and told her about the call from Medical Records and her interest in the job.

88.     Ms. Martin said she would have to call Ms. Behel back, but never did.

89.     On August 9, 2019, Ms. Behel went to the hospital to speak with Ms. Martin in person.

90.     Ms. Martin told Ms. Behel they were not giving her the job in Medical Records because she would be taking maternity leave soon.

91.     Ms. Martin told Ms. Behel she could offer her a multi skilled food service position in the cafeteria from 11:45 a.m. to 7:45 p.m.

92.     Ms. Behel recognized that position to be more physically demanding and less desirable than her regular line cook position.

93.     Ms. Behel asked Ms. Martin if she could just return to her regular morning shift in the cafeteria, which would enable her to continue picking up her children from school without having to pay for outside child care.

94.     Ms. Behel also did not see how changing her shift from breakfast to lunch/dinner would solve her problem, since Ms. Coke would still be her supervisor and was still refusing to accommodate her work restrictions.

95.     Rather than address Ms. Coke's failure to accommodate Ms. Behel's work restrictions, Ms. Martin told Ms. Behel she would see what else was available the next Monday that she could set up for an interview.

96.     On August 14, 2019, Ms. Behel had a checkup with her OB/GYN. Afterwards, she walked next door to the hospital for an update.

97.     Ms. Martin immediately sent Ms. Behel for an interview with Admitting.

98.     Ms. Martin asked Ms. Behel to send Admitting her résumé, which Ms. Behel did.

99.     Ms. Behel never heard back from Ms. Martin or Admitting.

100.    On August 16, 2019, Ms. Martin called Ms. Behel.

101.    Ms. Behel returned Ms. Martin's call and left a voice mail.

102.    On August 19, 2019, Ms. Martin and Ms. Lee called Ms. Behel and terminated her employment, just shy of her one (1)-year anniversary.

103.    Defendants told Ms. Behel that she was being terminated because she was "not qualified for anything at the hospital."

104.    Defendants cancelled Ms. Behel's health insurance upon her termination.

105.    Defendants failed to send Ms. Behel a notice of her right to continue health insurance coverage after her termination under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

106.    Defendants terminated Ms. Behel's employment just before she would have been eligible for twelve (12) weeks of leave for her pregnancy and maternity leave under the Family and Medical Leave Act.

107.   Defendants required Ms. Behel to use approximately thirty-two (32) hours of earned paid time off prior to her termination, while they refused to accommodate her pregnancy and required her to interview for other jobs like an outside job applicant.

108.   Defendants also took Ms. Behel's earned week of paid vacation that would have accrued just after Ms. Behel's termination.

109.   During Ms. Behel's employment, Defendants required her to work off the clock.

110.   Ms. Behel found it impossible to prepare breakfast in time for the start of breakfast service when she arrived at 5:00 a.m.

111.   Ms. Behel had to come in at 4:30 a.m. and work off the clock to get breakfast served in time, or else Defendants would reprimand her.

112.   Ms. Behel's supervisor told her that she could not clock in until seven (7) minutes before 5:00 a.m., which Ms. Behel did, even though she began working at 4:30 a.m. each morning.

113.   Ms. Behel's supervisor knew she was working off the clock.

114.   Upon information and belief, Defendants accommodated non-pregnant employees who had work restrictions or required light duty.

115.   Upon information and belief, Defendants gave accommodations to non-pregnant individuals who were similar to Ms. Behel in their ability or inability

to work.

116.   Upon information and belief, Defendants did not attempt to demote non-pregnant employees or offer them less desirable working shifts and conditions when they required accommodations.

117.   Upon information and belief, Defendants gave non-pregnant employees better pay, better benefits (fringe and otherwise), and preferential treatment in the terms and conditions of their employment.

118.   Upon information and belief, Defendants did not terminate non-pregnant employees who requested or required accommodations for work restrictions.

119.   Defendants subjected Ms. Behel to discrimination based on her pregnancy under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

120.   Ms. Behel further believes she was retaliated against for complaining about Defendants' discrimination and failure to accommodate her pregnancy and for informing Defendants that she had contacted an attorney regarding their unlawful discrimination and failure to accommodate her pregnancy.

121.   Defendants interfered with Ms. Behel's right to FMLA maternity leave.

122.   Defendants retaliated against Ms. Behel for her intent to take FMLA maternity leave.

123.   Defendants violated Ms. Behel's rights to be paid for hours worked and overtime pay for weeks in which Ms. Behel worked over forty (40) hours under the Fair Labor Standards Act.

124.   Defendants failed to provide notice to Ms. Behel of her right to continue health insurance coverage for the birth and care of her baby under COBRA.

125.   Defendants negligently and wantonly hired, trained, supervised, and retained managers and agents who violated Ms. Behel's rights to work in an environment free of unlawful discrimination and retaliation and failed to correct unlawful conduct when Ms. Behel reported it, causing her more harm.

126.   Defendants' unlawful conduct and termination of Ms. Behel's employment on the eve of the birth of her child were extreme, outrageous, and in contravention of public policy.

127.   Ms. Behel suffered harm as a result of Defendants' unlawful actions.

## COUNT I

## TITLE VII - PREGNANCY DISCRIMINATION

128.   Ms. Behel adopts and realleges paragraphs 2-7, 9, 11-19, 21, 23-24, 26, 28, 30, 32-104, 107-108, 114-119, 127 as if fully recited herein.

129.   During the events relevant to this claim, Ms. Behel was pregnant and protected under the PDA.

130.   Ms. Behel was qualified for her position.

131.   Defendants subjected Ms. Behel to adverse actions based on her pregnancy by not allowing her to continue to work, refusing to accommodate her work restrictions, requiring her to interview for other positions like an outside job applicant, requiring her to use and forfeit earned paid leave when she could have worked with accommodation, and by terminating her employment.

132.   Upon information and belief, Defendants accommodated non-pregnant workers' work restrictions.

133.   Upon information and belief, Defendant accommodated non-pregnant workers who were similar to Ms. Behel in their ability or inability to work.

134.   Upon information and belief, Defendants did not subject non-pregnant workers to demotion, termination, and less favorable terms, conditions, and pay.

135.   Upon information and belief, Defendants have a pattern or practice of discriminating against pregnant employees.

136.   Defendants' conduct proximately caused Ms. Behel to suffer lost pay and benefits, financial distress, loss of employment opportunity, embarrassment, humiliation, physical pain and suffering, emotional distress, and mental anguish for which she claims damages as set forth below.

WHEREFORE, Plaintiff respectfully requests an entry of judgment against Defendants pursuant to an Order awarding the following relief:

      a.    back pay, front pay, and lost benefits;

      b.    compensatory damages in an amount to be determined by a jury;

      b.    punitive damages in an amount to be determined by a jury;

      c.    nominal damages in an amount to be determined by a jury;

      d.    equitable and injunctive relief;

      e.    costs;

      f.    attorneys' fees;

      g.    pre- and post-judgment interest; and

      h.    such other or further relief available at law.

## COUNT II

## TITLE VII - RETALIATION

137.   Ms. Behel adopts and realleges paragraphs 2-7, 9, 11-19, 21, 23-24, 26, 28, 30, 32-104, 107-108, 114-120, 122, 127 as if fully recited herein.

138.   Ms. Behel opposed Defendants' treatment of her, which she reasonably and in good faith believed constituted unlawful pregnancy discrimination.

139.   Ms. Behel complained of discrimination and her manager's failure to accommodate her work restrictions to the HR Department, the Director of Human Resources, and the Chief Financial Officer.

140.   Ms. Behel informed the Director of Human Resources that she had consulted with an attorney regarding Defendants' discrimination and failure to accommodate her pregnancy.

141.   Defendants were aware of Ms. Behel's opposition and retaliated against her by terminating her employment.

142.   Upon information and belief, Defendants have a pattern or practice of retaliating against employees who assert their protected rights to oppose discriminatory practices.

143.   Defendants' conduct proximately caused Ms. Behel to suffer lost pay and benefits, financial distress, loss of employment opportunity, embarrassment, humiliation, physical pain and suffering, emotional distress, and mental anguish for which she claims damages as set forth below.

WHEREFORE, Plaintiff respectfully requests an entry of judgment against Defendants pursuant to an Order awarding the following relief:

      a.    back pay, front pay, and lost benefits;

      b.    compensatory damages in an amount to be determined by a jury;

c.      punitive damages in an amount to be determined by a jury;

d.      nominal damages in an amount to be determined by a jury;

e.      equitable and injunctive relief;

f.      costs;

g.      attorneys' fees;

h.      pre- and post-judgment interest; and

i.      such other or further relief available at law.

## COUNT III

## FAMILY MEDICAL LEAVE ACT - INTERFERENCE

144.   Ms. Behel adopts and realleges paragraphs 2-6, 8, 11-18, 20, 23, 25, 29, 32-33, 41-104, 106, 121, 125, 127  as if fully recited herein.

145.   Defendants are covered employers under the FMLA.

146.   Ms. Behel was pregnant.

147.   Defendants knew Ms. Behel was pregnant.

148.   Defendants knew Ms. Behel intended to take FMLA leave for the birth of her child and maternity leave.

149.   Ms. Behel was a regular, full-time employee covered under the FLSA, and would have been eligible for leave had Defendants not terminated her employment just shy of her one-year anniversary.

150.   Defendants unlawfully interfered with Ms. Behel's ability to take FMLA leave.

151.   Upon information and belief, Defendants have a pattern or practice of unlawfully interfering with employees' right to take Family and Medical Leave.

152.   Defendants' conduct proximately caused Ms. Behel to suffer lost pay and benefits, financial distress, and loss of employment opportunity for which she claims damages as set forth below.

WHEREFORE, Plaintiff respectfully requests an entry of judgment against Defendants pursuant to an Order awarding the following relief:

a.   back pay, front pay, and lost benefits;

b.   liquidated damages;

c.   nominal damages in an amount to be determined by a jury;

d.   equitable and injunctive relief;

e.   costs;

f.   attorneys' fees;

g.   pre- and post-judgment interest; and

h.   such other or further relief available at law.

## COUNT IV

## FAMILY MEDICAL LEAVE ACT - RETALIATION

153.   Ms. Behel adopts and realleges paragraphs 2-6, 8, 11-18, 20, 23, 25, 29, 32-33, 41-104, 106, 121-122, 125, 127 as if fully recited herein.

154.   Defendants are covered employers under the FMLA.

155.   Ms. Behel was pregnant.

156.   Defendants knew Ms. Behel was pregnant.

157.   Defendants knew Ms. Behel intended to take FMLA leave for the birth of her child and maternity leave.

158.   Ms. Behel was a regular, full-time employee covered under the FLSA, and would have been eligible for FMLA leave had Defendants not terminated her employment just shy of her one-year anniversary.

159.   Defendants' termination of Ms. Behel was causally connected to her request for maternity leave under the FMLA.

160.   Upon information and belief, Defendants have a pattern or practice of retaliating against employees who request or take FMLA leave.

161.   Defendants' conduct proximately caused Ms. Behel to suffer lost pay and benefits, financial distress, and loss of employment opportunity for which she claims damages as set forth below.

WHEREFORE, Plaintiff respectfully requests an entry of judgment against Defendants pursuant to an Order awarding the following relief:

    a.    back pay, front pay, and lost benefits;

    b.    liquidated damages;

    c.    nominal damages in an amount to be determined by a jury;

    d.    equitable and injunctive relief;

    e.    costs;

    f.    attorneys' fees;

    g.    pre- and post-judgment interest; and

    h.    such other or further relief available at law.

## COUNT V

## FAIR LABOR STANDARDS ACT VIOLATIONS

162.   Ms. Behel adopts and realleges paragraphs 2-6, 10-18, 22-23, 27, 31-33, 41-42, 109-113, 123, 125, 127 as if fully recited herein.

163.   Ms. Behel was at all relevant times an employee covered under the FLSA.

164.   Defendants were covered employers under the FLSA.

165.   Defendants failed to pay Ms. Behel wages for hours worked and overtime in weeks where Ms. Behel's hours exceeded forty (40) in one work week.

166.   Defendants directed Ms. Behel to work off the clock by not allowing her to clock in until seven (7) minutes before the start of her shift.

167.   Defendants knew Ms. Behel was working off the clock prior to being allowed to clock in.

168.   Defendants' acts were willful.

169.   Defendants showed a reckless disregard toward whether the FLSA prohibited their conduct.

170.   Upon information and belief, Defendants have a pattern or practice of violating the FLSA with regard to unpaid wages and overtime.

171.   Defendants' conduct proximately caused Ms. Behel to suffer lost pay and benefits, financial distress, and loss of employment opportunity for which she claims damages as set forth below.

WHEREFORE, Plaintiff respectfully requests an entry of judgment against Defendants pursuant to an Order awarding the following relief:

a.   back pay, front pay, and lost benefits;

b.   liquidated damages;

c.   nominal damages in an amount to be determined by a jury;

d.   equitable and injunctive relief;

e.   costs;

f.   attorneys' fees;

g.    pre- and post-judgment interest; and

h.    such other or further relief available at law.

## COUNT VI

## COBRA VIOLATION

172.   Ms. Behel adopts and realleges paragraphs 2-6, 11-18, 23, 32-33, 41-42, 102, 104-105, 124, 125, 127 as if fully recited herein.

173.   Defendants failed to issue Ms. Behel a notice of her rights to continue health insurance coverage following her termination as required under COBRA.

174.   Ms. Behel was harmed by being denied the option of continuing her health insurance coverage during and after the birth of her child because of Defendants' failure to provide notice.

WHEREFORE, Plaintiff respectfully requests an entry of judgment against Defendants pursuant to an Order awarding the following relief:

a.    statutory penalty of $110 per day;

b.    equitable and injunctive relief;

c.    costs;

d.    attorneys' fees;

e.    pre- and post-judgment interest; and

f.    such other or further relief available at law.

## COUNT VII

## NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION AND RETENTION

175.   Ms. Behel adopts and realleges paragraphs 2-6, 11-18, 23, 32-33, 41-174 as if fully recited herein.

176.   Defendants had a duty to provide a non-discriminatory, non-retaliatory work environment to Ms. Behel and other employees.

177.   Defendants had actual notice of the discrimination and failure to accommodate Ms. Behel's pregnancy through her complaints to HR, the Director of HR, and the Chief Financial Officer.

178.   Having such knowledge, Defendants negligently and wantonly failed to train and discipline those employees who actively discriminated and retaliated against Ms. Behel on an ongoing basis, and failed to protect her from further harm.

179.   Defendants failed to administer their own policies against discrimination and retaliation and clearly communicate such policies to their managers, agents, and employees.

180.   Defendants' failures to adequately train management and its human resources department created a discriminatory and retaliatory working environment that caused Ms. Behel harm.

181.   Defendants' conduct proximately caused Ms. Behel to suffer lost pay and benefits, financial distress, loss of employment opportunity, embarrassment, humiliation, physical pain and suffering, emotional distress, and mental anguish for which she claims damages as set forth below.

WHEREFORE, Plaintiff respectfully requests an entry of judgment against Defendants pursuant to an Order awarding the following relief:

      a.     back pay, front pay, and lost benefits;

      b.     compensatory damages to be determined by a jury;

      c.     punitive damages to be determined by a jury;

      d.     nominal damages in an amount to be determined by a jury;

      e.     equitable and injunctive relief;

      f.     costs;

      g.     attorneys' fees;

      h.     pre- and post-judgment interest; and

      i.     such other or further relief available at law.

## COUNT VIII

## TORT OF OUTRAGE

182.   Ms. Behel adopts and realleges paragraphs 2-6, 11-18, 23, 32-33, 41-174 as if fully recited herein.

183.   Defendants subjected Ms. Behel to egregious unlawful conduct, including, but not limited to, blatant discrimination and repeated failures to accommodate Ms. Behel's pregnancy from the top of the organization down, retaliation for opposing Defendants' unlawful conduct after complaining to senior management and HR officials, repeated failures to pay wages for hours worked, interference and retaliation based on Ms. Behel's impending need for FMLA maternity leave, loss of income and health insurance in the final months of her pregnancy, and failure to advise Ms. Behel of her right to continue health coverage after her termination for the birth and care of her baby.

184.   Defendants also subjected Ms. Behel to highly intrusive, egregious, and offensive conduct by contacting Ms. Behel's OB/GYN without her knowledge or consent and providing them with a job description that Ms. Behel disputes in order to obtain more restrictive work restrictions, arguably to justify removing Ms. Behel from her position and ultimately terminate her employment.

185.   The conduct of Defendants was extreme, outrageous, and beyond the bounds of decency.

186.   Defendants' conduct is not condoned by society and is against public policy of keeping pregnant mothers working.

187.   Defendants' conduct was intentional and employed to inflict severe emotional distress on Ms. Behel.

188.   Defendants' conduct proximately caused Ms. Behel to suffer lost pay and benefits, financial distress, loss of employment opportunity, embarrassment, humiliation, physical pain and suffering, emotional distress, and mental anguish for which she claims damages as set forth below.

WHEREFORE, Plaintiff respectfully requests an entry of judgment against Defendants pursuant to an Order awarding the following relief:

      a.    back pay, front pay, and lost benefits;

      b.    compensatory damages to be determined by a jury;

      c.    punitive damages to be determined by a jury;

      d.    nominal damages in an amount to be determined by a jury;

      e.    equitable and injunctive relief;

      f.    costs;

      g.    attorneys' fees;

      h.    pre- and post-judgment interest; and

      i.    such other or further relief available at law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the Court to order the following relief:

A.   Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation therewith,

from further engaging in the discriminatory and retaliatory practices described herein;

B.      Order Defendants to institute and carry out policies, practices, and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing policies against pregnancy discrimination and retaliation for opposing discrimination in the workplace;

C.      Order Defendants to make Plaintiff whole by providing back pay, front pay, lost benefits, reinstatement, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including, but not limited to, compensatory, statutory, liquidated, and punitive damages where available;

D.      Award Plaintiff costs, pre-judgment and post-judgment interest, and attorneys' fees; and

E.      Award such other or further relief as requested herein.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES.**

Respectfully submitted,

*Sonya C. Edwards*

Sonya C. Edwards (ASB-8848-S73E)
Attorney for Plaintiff
Miranda Behel

OF COUNSEL:

EDWARDS LAW, LLC
3900 Montclair Road, Suite 1 # 130937
Birmingham, Alabama  35213
Office: (205) 871-7567
sonya@sonyaedwardslaw.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

North Alabama Medical Center
c/o CT Corporation System
300 Montvue Road
Knoxville, TN 37919-5546

RCCH Healthcare Partners d/b/a LifePoint Health
c/o CT Corporation System
300 Montvue Road
Knoxville, TN 37919-5546

LifePoint Health, Inc.
c/o CT Corporation System
300 Montvue Road
Knoxville, TN 37919-5546

**EXHIBIT A**

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other inf omati on before completing this form.

FEPA
X EEOC   420-2020-01025

_____ and EEOC

*State or local Agency. if any*

| Name (*indicate Mr. Ms. Mrs.*) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Miranda Behel | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|

Named is the Employer. Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two. list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| North Alabama Medical Center | 500+ | (256) 629 1000 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1701 Veterans Drive | Florence, AL 35630 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| RCCH HealthCare Partners d/b/a LifePoint Health | 500+ | (615) 920-7000 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 330 Seven Springs Way | Brentwood, TN 37027 | |

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

__ RACE __ COLOR _X_ SEX __ RELIGION __ NATIONAL ORIGIN

_X_ RETALIATION __ AGE _X_ DISABILITY _X_ OTHER (Specify below.)
Pregnancy

DATE(S) DISCRIMINATION TOOK PLACE
Earliest        Latest 8/19/2019

__ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

SEE ATTACHED

RECEIVED

RECEIVED

JAN 1 7 2020

U.S. EEOC
Birmingham District Office

JAN 1 6 2020
C.P.S

U.S. EEOC
Birmingham District Office

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

1.16.2020
Date

Miranda Behel
*Charging Party Signature*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(*month, day, year*)

My name is Miranda Behel. I am a female who was pregnant while working for North Alabama Medical Center (NAMC) in Florence, Alabama. I began employment with NAMC on or about September 9, 2018 as a line cook. I am and have at all times been qualified for my position.

In July 2019, when I was 20 weeks pregnant, I had a routine prenatal checkup with my OB/GYN. Their office gave me a letter outlining general work restrictions for pregnant workers that I gave to my supervisor, Monica Coke. Ms. Coke told me I needed a letter stating that I could either work or not work. I went back to my doctor's office to request another letter. That letter, dated July 22, 2019, stated that I should not lift, push, or pull anything over 20 lbs. for the remainder of my pregnancy. That was my only restriction. Ms. Coke told me that was not good enough and that she needed a letter saying I had no restrictions. I told her I needed to work and needed my income. She told me to take it up with human resources.

I called human resources and told them about Ms. Coke's response. They did not suggest that I could be accommodated in my position. I told them (and Ms. Coke) that I only needed to lift, push, or pull anything over 20 lbs. very occasionally. It was not an essential function of my day-to-day job duties. Up to that point, my coworkers had pitched in where needed with no problems or complaints. It did not interfere with our jobs because it happened so infrequently. Ms. Coke and Human Resources immediately refused to continue that accommodation.

On or about July 23, 2019, Kathy Martin in HR scheduled an interview for me with Medical Records. She asked me to interview for a job that paid $ 9.21/hour, whereas I had been making $ 12.00. I went for the interview the next day because I needed to keep my job. On July 26, 2019, I called Steve Hopper, the Chief Financial Officer, and explained my situation. He said he would look into it and call me back, but he never did.

On or about August 1, 2019, Cheryl Lee, the Director of Human Resources, left me a voice mail. I called her back that afternoon and several times the next day, but she never returned my calls. On August 5, 2019, I went to the hospital to try to meet with her in person. Ms. Lee had me wait in the lobby for over an hour saying someone was in her office. She finally called me back to her office after 3:00 p.m. She was acting very agitated and abrupt and told me twice she needed to go to a meeting at 3:30 p.m. After trying to get answers and getting no resolutions, I told her I had spoken to an attorney about my situation. She told me that did not matter. Nothing would change, and that it was too much of a "hassle" to ask people in the kitchen to help me. She told me there was nothing she could do and concluded our meeting.

After I left Ms. Lee's office on August 5, 2019, I called Medical Records and told them I was still interested in the position I interviewed for on the 23rd. They told me they would be in touch.

On August 6, Kathy Martin in HR called and left a voice mail. I tried calling back, but she did not answer. On August 7, 2019, Medical Records called and said they had a position open and would talk to human resources about it on August 8, 2019. I waited all day on the 8th for a call. That afternoon, I called Ms. Martin and told her about their offer and my interest in the job. Ms. Martin said she would have to call me back but never did.

1

On August 9, 2019, I went to the hospital and spoke with Ms. Martin in person. She told me they were not giving me the job in Medical Records because I would be taking maternity leave soon. She told me she could give me a position in the cafeteria from 11:45 a.m. to 7:45 p.m. I told her I would prefer to just return to my regular shift due to having to pick up my children from school. Additionally, Ms. Coke had already refused to accommodate my lifting restriction in the cafeteria, so I did not see how changing my shift from breakfast to lunch would solve her failure to accommodate my pregnancy. Ms. Martin told me she would see what else was available the next Monday that she could set up for an interview.

On August 14, 2019, I had a checkup with my OB/GYN and decided to walk over to the hospital to find out the latest. Ms. Martin immediately sent me for an interview with Admitting. She also asked me to send them my resume, which I did. I never heard back from Ms. Martin or Admitting.

On August 16, 2019, Ms. Martin called. I returned her call and left a voice mail.

On August 19, 2019, while pregnant and just shy of my 1-year anniversary, NAMC terminated my employment. Ms. Martin and Cheryl Lee called me by phone and said I was not "qualified" for anything at the hospital. They asked if I had any questions. I told them no, because I wanted to hang up the phone and cry. And I did. I was scared, completely stressed, overwhelmed, and left wondering how I was going to have my baby and afford to live.

NAMC cancelled my health insurance, prevented me from taking maternity leave under the Family Medical Leave Act (FMLA), and took my week of paid vacation that would have accrued on August 20, 2019, the day after my termination.

Upon information and belief, NAMC gave male and non-pregnant employees accommodations when those employees had work restrictions. Upon information and belief, NAMC did not offer male and non-pregnant employees a demotion or less desirable working shifts and conditions when they requested an accommodation. Upon information and belief, male and non-pregnant employees received better pay, better benefits (fringe and otherwise), and preferential treatment in the terms and conditions of their employment.

I believe I have been subjected to discrimination based on my pregnancy and sex (Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act), and disability (Americans with Disabilities Act, as amended). I also believe I have been retaliated against for asserting my protected rights and complaining about NAMC's discrimination and failure to accommodate my pregnancy.

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | __ FEPA<br>_X_ EEOC | 420-2020-01029 |

_____ and EEOC

State or local Agency, if any

| Name (indicate Mr. Ms. Mrs.)<br>Ms. Miranda Behel | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Street Address | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>North Alabama Medical Center | No. Employees, Members<br>500+ | Phone No. (Include Area Code)<br>(256) 629-1000 |
|---|---|---|
| Street Address<br>1701 Veterans Drive | City, State and ZIP Code<br>Florence, AL 35630 | |
| Name<br>RCCH HealthCare Partners d/b/a LifePoint Health | No. Employees, Members<br>500+ | Phone No. (Include Area Code)<br>(615) 920 7000 |
| Street Address<br>330 Seven Springs Way | City, State and ZIP Code<br>Brentwood, TN 37027 | |

| DISCRIMINATION BASED ON (Check appropriate box(es).)<br><br>__ RACE  __ COLOR  _X_ SEX  __ RELIGION  __ NATIONAL ORIGIN<br><br>_X_ RETALIATION  __ AGE  _X_ DISABILITY  _X_ OTHER (Specify below.)<br>Pregnancy | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest          Latest 8/19/2019<br><br>__ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

SEE ATTACHED

RECEIVED

JAN 17 2020

U.S. EEOC
Birmingham District Office

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT |
| 1.16.2020<br>Date          Miranda Behel<br>Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

My name is Miranda Behel. I am a female who was pregnant while working for North Alabama Medical Center (NAMC) in Florence, Alabama. I began employment with NAMC on or about September 9, 2018 as a line cook. I am and have at all times been qualified for my position.

In July 2019, when I was 20 weeks pregnant, I had a routine prenatal checkup with my OB/GYN. Their office gave me a letter outlining general work restrictions for pregnant workers that I gave to my supervisor, Monica Coke. Ms. Coke told me I needed a letter stating that I could either work or not work. I went back to my doctor's office to request another letter. That letter, dated July 22, 2019, stated that I should not lift, push, or pull anything over 20 lbs. for the remainder of my pregnancy. That was my only restriction. Ms. Coke told me that was not good enough and that she needed a letter saying I had no restrictions. I told her I needed to work and needed my income. She told me to take it up with human resources.

I called human resources and told them about Ms. Coke's response. They did not suggest that I could be accommodated in my position. I told them (and Ms. Coke) that I only needed to lift, push, or pull anything over 20 lbs. very occasionally. It was not an essential function of my day-to-day job duties. Up to that point, my coworkers had pitched in where needed with no problems or complaints. It did not interfere with our jobs because it happened so infrequently. Ms. Coke and Human Resources immediately refused to continue that accommodation.

On or about July 23, 2019, Kathy Martin in HR scheduled an interview for me with Medical Records. She asked me to interview for a job that paid $ 9.21/hour, whereas I had been making $ 12.00. I went for the interview the next day because I needed to keep my job. On July 26, 2019, I called Steve Hopper, the Chief Financial Officer, and explained my situation. He said he would look into it and call me back, but he never did.

On or about August 1, 2019, Cheryl Lee, the Director of Human Resources, left me a voice mail. I called her back that afternoon and several times the next day, but she never returned my calls. On August 5, 2019, I went to the hospital to try to meet with her in person. Ms. Lee had me wait in the lobby for over an hour saying someone was in her office. She finally called me back to her office after 3:00 p.m. She was acting very agitated and abrupt and told me twice she needed to go to a meeting at 3:30 p.m. After trying to get answers and getting no resolutions, I told her I had spoken to an attorney about my situation. She told me that did not matter. Nothing would change, and that it was too much of a "hassle" to ask people in the kitchen to help me. She told me there was nothing she could do and concluded our meeting.

After I left Ms. Lee's office on August 5, 2019, I called Medical Records and told them I was still interested in the position I interviewed for on the 23rd. They told me they would be in touch.

On August 6, Kathy Martin in HR called and left a voice mail. I tried calling back, but she did not answer. On August 7, 2019, Medical Records called and said they had a position open and would talk to human resources about it on August 8, 2019. I waited all day on the 8th for a call. That afternoon, I called Ms. Martin and told her about their offer and my interest in the job. Ms. Martin said she would have to call me back but never did.

1

On August 9, 2019, I went to the hospital and spoke with Ms. Martin in person. She told me they were not giving me the job in Medical Records because I would be taking maternity leave soon. She told me she could give me a position in the cafeteria from 11:45 a.m. to 7:45 p.m. I told her I would prefer to just return to my regular shift due to having to pick up my children from school. Additionally, Ms. Coke had already refused to accommodate my lifting restriction in the cafeteria, so I did not see how changing my shift from breakfast to lunch would solve her failure to accommodate my pregnancy. Ms. Martin told me she would see what else was available the next Monday that she could set up for an interview.

On August 14, 2019, I had a checkup with my OB/GYN and decided to walk over to the hospital to find out the latest. Ms. Martin immediately sent me for an interview with Admitting. She also asked me to send them my resume, which I did. I never heard back from Ms. Martin or Admitting.

On August 16, 2019, Ms. Martin called. I returned her call and left a voice mail.

On August 19, 2019, while pregnant and just shy of my 1-year anniversary, NAMC terminated my employment. Ms. Martin and Cheryl Lee called me by phone and said I was not "qualified" for anything at the hospital. They asked if I had any questions. I told them no, because I wanted to hang up the phone and cry. And I did. I was scared, completely stressed, overwhelmed, and left wondering how I was going to have my baby and afford to live.

NAMC cancelled my health insurance, prevented me from taking maternity leave under the Family Medical Leave Act (FMLA), and took my week of paid vacation that would have accrued on August 20, 2019, the day after my termination.

Upon information and belief, NAMC gave male and non-pregnant employees accommodations when those employees had work restrictions. Upon information and belief, NAMC did not offer male and non-pregnant employees a demotion or less desirable working shifts and conditions when they requested an accommodation. Upon information and belief, male and non-pregnant employees received better pay, better benefits (fringe and otherwise), and preferential treatment in the terms and conditions of their employment.

I believe I have been subjected to discrimination based on my pregnancy and sex (Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act), and disability (Americans with Disabilities Act, as amended). I also believe I have been retaliated against for asserting my protected rights and complaining about NAMC's discrimination and failure to accommodate my pregnancy.

2

**EXHIBIT B**



### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Birmingham District Office

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 651 7032
FAX (205) 212-2105
Website: www.eeoc.gov

EEOC Charge No. 420-2020-01025

Miranda Behel                                    **Charging Party**
c/o Sonya C. Edwards
Edwards Law, LLC
███████████ ████████
████████████████

vs.

North Alabama Medical Center                     **Respondent**
c/o Loren M. Lancaster
Waller Lansden Dortch & Davis, LLP
███████████ ████████
█████████████

### LETTER OF DETERMINATION



Under the authority vested in me by the Commission's Procedural Regulations, the following Determination is issued on the merits of the subject charge filed with the Commission and alleging violations of Title VII of the Civil Rights Act of 1964, as amended (Title VII) and the Americans with Disabilities Act of 1990 (ADA). Respondent is an employer within the meaning of Title VII and the ADA. Timeliness and all other requirements for coverage have been met.

Charging Party alleges that Respondent engaged in unlawful employment practices in violation of Title VII, by discharging her because of her pregnancy. She also alleges she was discriminated against on the basis of disability, because of work restrictions placed on her by her doctor, and that Respondent denied her a reasonable accommodation and discharged her.

Respondent denies Charging Party's allegations of discrimination and contends that Charging Party was discharged on August 19, 2019, after failing to find an accommodation for her restrictions.

The evidence obtained during the Commission's investigation indicates that Respondent discriminated against Charging Party because of her pregnancy by discharging her. Evidence showed that Respondent removed Charging Party from her position after receiving a note from her doctor with restrictions for pushing, pulling, or lifting more than 20lbs. Evidence revealed that Charging Party was discharged and informed that she could be rehired. Evidence also revealed that Respondent could have accommodated Charging Party until Charging Party was able to return to work. Respondent failed to show that Charging Party's request for accommodation created an undue hardship.

Page 2 of 2
Miranda Behel vs. North Alabama Medical Center
Charge Number 420-2020-01025

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate unlawful practices by informal methods of conciliation. Therefore, the parties are invited to join with the Commission in reaching a just resolution of this matter. If Respondent wishes to accept this invitation to participate in conciliation efforts, it may do so by completing the enclosed Invitation to Conciliate and returning it to the assigned Commission Representative within fourteen (14) days of the date of this determination. The assigned Commission Representative for purposes of conciliation is Mr. Andre Williams. Mr. Williams can be contacted by e-mail at _____, by telephone at _____, or by fax at _____.

The remedies for violations of the statutes enforced by the Commission are designed to make the identified victim whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by Respondent not to engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26). Should Respondent have questions regarding the conciliation process or the conciliation terms it would like to propose, we encourage it to contact the assigned Commission Representative. Should there be no response from the Respondent within fourteen (14) days of the date of this determination; the Commission may conclude that further conciliation efforts would be futile or nonproductive.

FEB 1 2 2021

On behalf of the Commission:

FOR

Date Mailed

Bradley A. Anderson
District Director

Enclosure:  Invitation for Conciliation



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 651-7032
FAX (205) 212-2105
Website: www.eeoc.gov

EEOC Charge No. 420-2020-01029

Miranda Behel                          **Charging Party**
c/o Sonya C. Edwards
Edwards Law, LLC
▬▬▬▬▬▬▬▬
▬▬▬▬▬▬

vs.

RCCH Healthcare Partners               **Respondent**
c/o Loren M. Lancaster
Waller Lansden Dortch & Davis, LLP
▬▬▬▬▬▬  ▬▬  ▬▬▬

## LETTER OF DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, the following Determination is issued on the merits of the subject charge filed with the Commission and alleging violations of Title VII of the Civil Rights Act of 1964, as amended (Title VII) and the Americans with Disabilities Act of 1990 (ADA). Respondent is an employer within the meaning of Title VII and the ADA. Timeliness and all other requirements for coverage have been met.

Charging Party alleges that Respondent engaged in unlawful employment practices in violation of Title VII, by discharging her because of her pregnancy. She also alleges she was discriminated against on the basis of disability, because of work restrictions placed on her by her doctor, and that Respondent denied her a reasonable accommodation and discharged her.

Respondent denies Charging Party's allegations of discrimination and contends that Charging Party was discharged on August 19, 2019, after failing to find an accommodation for her restrictions.

The evidence obtained during the Commission's investigation indicates that Respondent discriminated against Charging Party because of her pregnancy by discharging her. Evidence showed that Respondent removed Charging Party from her position after receiving a note from her doctor with restrictions for pushing, pulling, or lifting more than 20lbs. Evidence revealed that Charging Party was discharged and informed that she could be rehired. Evidence also revealed that Respondent could have accommodated Charging Party until Charging Party was able to return to work. Respondent failed to show that Charging Party's request for accommodation created an undue hardship.

Page 2 of 2
Miranda Behel vs. RCCH Healthcare Partners
Charge Number 420-2020-01029

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate unlawful practices by informal methods of conciliation. Therefore, the parties are invited to join with the Commission in reaching a just resolution of this matter. If Respondent wishes to accept this invitation to participate in conciliation efforts, it may do so by completing the enclosed Invitation to Conciliate and returning it to the assigned Commission Representative within fourteen (14) days of the date of this determination. The assigned Commission Representative for purposes of conciliation is Mr. Andre Williams. Mr. Williams can be contacted by e-mail at ████████████, by telephone at ████████ ████, or by fax at ████████████████.

The remedies for violations of the statutes enforced by the Commission are designed to make the identified victim whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by Respondent not to engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26). Should Respondent have questions regarding the conciliation process or the conciliation terms it would like to propose, we encourage it to contact the assigned Commission Representative. Should there be no response from the Respondent within fourteen (14) days of the date of this determination; the Commission may conclude that further conciliation efforts would be futile or nonproductive.

On behalf of the Commission:

**FEB 1 2 2021**

Date Mailed

Bradley A. Anderson
District Director

Enclosure: Invitation for Conciliation

EEOC Form 161-A (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

# EXHIBIT C

| To:   **Miranda Behel** | From:   **Birmingham District Office** |
| --- | --- |
| ▮ | **Ridge Park Place** |
|   | **1130 22nd Street South** |
|   | **Birmingham, AL 35205** |

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| **420-2020-01025** | **ANDRE D. WILLIAMS,**<br>**Investigator** | ▮ |

**TO THE PERSON AGGRIEVED:**

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally signed by ELESS BROWN
DN: c=US, o=U.S. Government, ou=Equal
Employment Opportunity Commission, cn=ELESS
BROWN,
0.9.2342.19200300.100.1.1=e5001002834036
Date: 2021.02.26 10:50:11 -06'00'

**FOR**

**MAR 1 8 2021**

Enclosures(s)

**BRADLEY A. ANDERSON,**
**District Director**

*(Date Issued)*

cc:   **NORTH ALABAMA MEDICAL CENTER**
**c/o Loren M. Lancaster**
**Waller Lansden Dortch & Davis, LLP**

▮

**Sonya Edwards**
**EDWARDS LAW LLC**

▮

EEOC Form 161-A (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

| To: **Miranda Behel** | From: | **Birmingham District Office** |
|---|---|---|
| | | **Ridge Park Place** |
| | | **1130 22nd Street South** |
| | | **Birmingham, AL 35205** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **420-2020-01029** | **ANDRE D. WILLIAMS, Investigator** | |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Sheri Guenster**  /for

Digitally signed by Sheri Guenster
DN: cn=Sheri Guenster, o=EEOC, ou=Birmingham
District Office, email sheri.guenster@eeoc.gov, c US
Date: 2021.03.08 14:00:45 -06'00'

**MAR 1 8 2021**

Enclosures(s)

**BRADLEY A. ANDERSON,**
**District Director**

*(Date Issued)*

cc:

**RCCH HEALTHCARE PARTNERS**
**c/o Loren Lancaster**
**WALLER LANSDEN DORTCH & DAVIS**

**Sonya Edwards EDWARDS LAW, LLC**